NANTICOKE MEMORIAL HOSPITAL, INC., a Delaware corporation, and Hassan G. Ramachandra, M.D., Defendants Below, Appellants,

v.

Martha Lee UHDE, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: March 26, 1985.

Decided: Sept. 10, 1985.

Jane R. Roth (argued), of Richards, Layton & Finger, Wilmington, for appellants.

Harold Schmittinger (argued), Catherine T. Hickey, and Charles Whitehurst of Schmittinger & Rodriguez, P.A., Dover, for appellee.

Before HORSEY, MOORE and CHRISTIE, JJ.

CHRISTIE, Justice.

This case arises from a wrongful death claim filed by Martha Lee Uhde, the appellee, against Nanticoke Memorial Hospital, Inc., a Delaware corporation, (the hospital), and Hassan G. Ramachandra, M.D., (the doctor), appellants, on account of the death of appellee's husband from what the jury found to have been a heart attack. The death occurred less than two hours after the doctor had discharged the patient from the hospital emergency room with a diagnosis of gastritis.

A Superior Court jury found Dr. Ramachandra negligent. It found the hospital liable as his employer. The widow was awarded $250,000.

Appellants raise six issues on appeal. None of the arguments requires a detailed recital of the facts of the case or of the conflicting expert testimony. However, we note at the outset that there was substantial evidence to support the factual findings of the jury.

## I.

The death occurred on June 9, 1973, and suit was filed in Superior Court on June 5, 1975. Thereafter, the case went before the Delaware Joint Medical-Legal Malpractice Screening Panel (as it then existed under a statute which was later repealed), and there were settlement negotiations as well as preliminary discovery procedures. However, there had been no docket entries in Superior Court since January 23, 1976. Therefore, on December 21, 1977, the Superior Court dismissed the case on its own initiative under Superior Court Civil Rule 41(e)[1] for failure to prosecute after no one had responded for the plaintiff at a calendar call in connection with a list of pending cases which included this case.

There is no evidence that the notice required by Superior Court Civil Rule 41(e) was sent to the parties or their attorneys before the dismissal. Settlement negotiations continued for a few months after the dismissal as if there had been no dismissal, but no attempt was made on behalf of the appellee to have the case reinstated until after her attorney died, almost three years later on December 2, 1980. Meanwhile, appellee's attorney had been assuring ap-

---

1. Superior Court Civil Rule 41(e) provides:

    *Dismissal for Failure to Prosecute.* In the case of any action which has been pending in this Court for more than one year without any proceedings having been taken therein during that year, the Prothonotary shall after the expiration of the one year period mail to the parties a notice notifying them that the action will be dismissed by the Court for want of prosecution if no proceedings are taken therein within 30 days. If no proceedings are taken in the action within a period of 30 days after the mailing of such notice, it shall thereupon be dismissed by the Court as of course for want of prosecution. Such actions may also be dismissed for want of prosecution at any time by motion of any party.

pellee that the case was progressing toward trial. The record does not reveal when appellee's attorney actually learned that the case had been dismissed, and some of his representations to her may well have been made in good faith. However, all the circumstances indicate that he was not preparing the case for trial, and that he was deliberately misinforming her about the status of her case for an appreciable period of time before his death. Appellee's attempts to persuade the Superior Court to reinstate her case after her attorney's death were opposed by the appellants, but after briefing and argument the Superior Court did reinstate the case by order dated December 23, 1981.[2]

■ Appellants contend that Superior Court abused its discretion when it restored the case to the trial calendar, pursuant to Superior Court Civil Rule 60(b)(6), on a motion filed three years after the case had been dismissed. That rule permits the Court to "relieve a party ... from a final judgment, order, or proceeding for ... any ... reason justifying relief from the operation of the judgment." In *Jewell v. Division of Social Services*, Del.Supr., 401 A.2d 88 (1979), this Court adopted the "extraordinary circumstances" test as the standard for Rule 60(b)(6) motions.

We have reviewed the circumstances surrounding the dismissal, and we note four factors which combine to meet the extraordinary circumstances test: (1) The gross negligence of appellee's attorney and his active misrepresentations to his client that the case was about to go to trial were solely his responsibility and involved no negligence on the part of appellee. *See Rittenhouse Associates, Inc. v. Frederic A. Potts and Co., Inc.*, Del.Supr. 382 A.2d 235 (1977); (2) For a time after the case was dismissed, negotiations in regard to the case continued between appellee's attorney and appellants' representatives and so, to that extent, the conduct of both

parties indicated that they attached little significance to the dismissal; (3) There is no evidence that the notices required by Superior Court Rule 41(e) and 77(d) actually went forward; and (4) The case against both defendants was based on the alleged negligence of Dr. Ramachandra during a single examination and diagnosis, and the passage of time did not appear to have been prejudicial to his defense since he had a clear recollection of the events involved.

Under the totality of circumstances, we find no abuse of discretion in the action of the Superior Court in reinstating the case. The hospital did claim to have been prejudiced by the delay because it no longer had records of its training and supervision of the doctor. However, the verdict against the hospital was based entirely upon the negligence of its employee, the doctor, under the theory of *respondent superior*. No independent theory of negligence on the part of the hospital was presented to the jury.

### II.

The reinstatement of the case on the trial calendar had, in effect, been a conditional reinstatement based on an assumption that no substantial prejudice to appellants would result from the delay in bringing the case to trial.

Thereafter, in 1983, appellee sought permission to amend the complaint to allege that the hospital had been negligent in its supervision and control of the doctor. However, the Superior Court denied that motion in view of evidence that hospital personnel no longer had recollection in 1984 of the supervision and control steps taken more than ten years earlier.

■ At trial before the Superior Court jury, appellee's attorney made various references to the hospital's supervision and control of resident physicians and to the duty of the House Physicians Committee to

---

**2.** On January 21, 1981, appellee's present counsel entered their appearance on her behalf in

this case.

direct and evaluate the doctor. Objections to these references were overruled, and a motion for a mistrial was denied by the trial judge. Appellants argue on appeal that the trial court erred in these rulings.

We find no merit to these contentions. The trial court did not permit the evidence to be introduced or the references to be made in order to show any independent basis for liability on the part of the hospital. The evidence was admitted on the ground that it had some bearing on the doctor's training and on his knowledge of the applicable standard of care. Furthermore, as noted earlier, the liability of the hospital rested solely on its liability for the doctor's negligence under the theory of *respondent superior*, and the jury was so instructed.

It was not an abuse of discretion to admit the testimony and to deny the motion for a mistrial.

### III.

█ Appellants argue that the trial court improperly read 29 *Del.C.* §§ 4707(a) and 4709(d)[3] to the jury. These statutes provide that the death certificate issued by the office of the medical examiner shall be received as competent evidence of the matters and facts therein contained. Appellants argue that the opinion given in the death certificate fails to satisfy the specific evidentiary requirements set forth in 18 *Del.C.* § 6853, and that in view of Dr. Tobin's testimony in this case, it was error to instruct the jury as to the evidentiary significance usually attributed to a death certificate. That statute provides that "... [n]o liability shall be based upon asserted negligence unless expert medical testimony

is presented ... as to the causation of the alleged personal injury or death ...." In this case there was a difference of opinion among the experts as to the cause of death. Dr. Tobin, who signed the certificate, had testified that she had done no autopsy and that her statement in the certificate that death was caused by "[a]cute coronary occlusion" was based upon her experience in doing other autopsies in natural death cases.

We find no reversible error in what was done as to the death certificate in this case. The death certificate was in evidence. The fact that it was based on what may be termed an "educated guess," rather than an autopsy examination, was known to the jury and was a fact which they could evaluate along with all the other conflicting expert testimony as to the cause of death.

The issue raised by the appellants as to whether or not the cause of death can be established in a malpractice case (where "expert medical testimony" is required by 18 *Del.C.* § 6853) by a mere statement in a death certificate does not have to be resolved in this case since there was live, expert medical testimony supporting the findings of the jury.

█ Appellants also argue the disputed instruction amounted, under the circumstances, to an improper comment on the evidence. Del. Const. art. IV, § 19. We find that the trial judge's reading of the statutes on the evidentiary value attributed to a death certificate did not amount to an improper comment on evidence.

Moreover, if any error was made as to the death certificate, it was harmless error.

---

**3.** 29 *Del.C.* § 4707. *Postmortem examination; autopsy reports.*

   (a) When the cause of death shall have been established within reasonable medical certainty by a Medical Examiner, he shall prepare a written report and file it in the office of the Chief Medical Examiner within 30 days after his investigation of such death.

   29 *Del.C.* § 4709. *Records and reports; evidence.*

\* \* \* \* \* \*

   (d) The records of the office of the Chief Medical Examiner prepared by the Chief Medical Examiner or by anyone under his direction or supervision or a true copy thereof certified by the Chief Medical Examiner shall be received as competent evidence in any court in this State of the matters and facts therein contained.

## IV.

■ Appellants argue that the trial court erred when it gave the jury a general instruction on the losses which the widow claimed on account of accumulations the deceased would have made had he lived and which he would have left to her. It is true that the deceased was close to retirement age and, therefore, there was no claim that he would have accumulated future earnings beyond the date of the trial. However, there was evidence as to the increased value of his life insurance coverage, which would have taken place had he lived out his life expectancy. That, of course, was a form of accumulation which the widow lost by the decedent's premature death. Under the circumstances, therefore, it was not error for the trial judge to give a charge on the loss of future accumulations.

## V.

■ It is now the law in Delaware that in medical malpractice cases the trier of the fact "shall consider evidence of ... any public collateral source of compensation benefits ...." 18 *Del.C.* § 6862. The purpose of this statute is to prevent the collection of a loss from a collateral public source (such as Social Security) and then the collection for the same loss from the party or hospital being sued. This statute is a part of a comprehensive act dealing with medical malpractice litigation which became law on April 26, 1976, after this case was filed. 60 Del. Laws, c. 373. The statute provides that:

> This chapter applies to actions, cases and proceedings brought after April 26, 1976, and also applies to any further conduct of actions, cases and proceedings then pending, except to the extent that application of this chapter would not be feasible, or would work injustice, in which event former procedures apply.

18 *Del.C.* § 6857.

In this case, the appellee-widow did receive Social Security benefits for which she would not have been eligible but for the death of her husband. It is appellants' position that such benefits amounted to public collateral source income, that appellants should have been allowed to present evidence of this income to the jury, and that the judge should have instructed the jury to deduct such income from any award it made.

In a pretrial ruling, the trial court found, in effect, that the deduction of such benefits from the award "would work injustice" within the meaning of 18 *Del.C.* § 6857. Appellants, in challenging this ruling, point out that the purpose of the new statute was to avoid double payments to injured parties, and that the elimination of such duplication cannot properly be deemed to be an "injustice" to anyone. Appellee attempts to counter this argument with a suggestion that in any event only the procedural innovations of the statute were to be applied to cases then pending (in the absence of an injustice), and that substantive changes should be subject to the usual rule that substantive changes in the law are not to be applied retrospectively. *See Monacelli v. Grimes,* Del.Supr., 99 A.2d 255 (1953).

Appellee's contention finds some support in the wording of § 6857, which states that "former *procedures* [shall] apply if an injustice would result from application of the statute."

We are of the opinion that the trial judge did not err when he applied the law in regard to payments from a collateral source, as it existed at the time of the death and at the time the case was filed. If Social Security payments are a "public collateral source" and if his ruling depended on a finding that it would be an injustice to the widow to apply a new rule enacted after the case was filed, he did not, under the circumstances, err in such finding.

## VI.

■ Finally, appellants contend that the trial judge erred when he instructed the jury that it could determine the standard of

care required of a health care provider "from the evidence" without specifically explaining that the jury may consider only expert medical evidence on that issue as appellants assert is required by 18 *Del.C.* § 6853.[4] We find this argument to be without merit in this particular case since the only evidence on the standard of care was that given by expert medical witnesses. The charge could have been more explicit on this point, but we find no possible prejudice to any substantial rights of the parties arising from this theoretical defect in the charge.

\* \* \*

There being no reversible error in the proceedings in Superior Court, the judgment of Superior Court is affirmed.

---

**4.** 18 *Del.C.* § 6853. *Requirement of expert medical testimony.*

No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death, except that such expert medical testimony shall not be required if a malpractice review panel has found negligence to have occurred and to have caused the alleged personal injury or death and the opinion of such panel is admitted into evidence; provided, however, that a rebuttable inference that personal injury or death was

caused by negligence shall arise where evidence is presented that the personal injury or death occurred in any 1 or more of the following circumstances: (1) A foreign object was unintentionally left within the body of the patient following surgery; (2) an explosion or fire originating in a substance used in treatment occurred in the course of treatment; or (3) a surgical procedure was performed on the wrong patient or the wrong organ, limb or part of the patient's body. Except as otherwise provided herein, there shall be no inference or presumption of negligence on the part of a health care provider.