

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-9-2008

# Reger v. AI DuPont Hosp

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1387

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Reger v. AI DuPont Hosp" (2008). *2008 Decisions.* Paper 1776.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1776

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 07-1387

KATHLEEN REGER; MICHAEL REGER, AS PARENTS AND NATURAL
GUARDIANS OF NICHOLAS REGER, A MINOR, DECEASED;
KATHLEEN REGER 1; MICHAEL REGER 2 INDIVIDUALLY
AND IN THEIR OWN RIGHT,

Appellants

v.

THE A.I. DUPONT HOSPITAL FOR CHILDREN OF THE NEMOURS
FOUNDATION; THE NEMOURS FOUNDATION;
WILLIAM I. NORWOOD, M.D., PH.D.;
CHRISTIAN PIZARRO, M.D.; RUSSELL RAPHAELY, M.D.;
ELLEN SPURRIER, M.D.; DEBORAH DAVIS, M.D.; D. DUNCAN, PERFUSIONIST

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. No. 05-cv-00661)
District Judge: Hon. Berle M. Schiller

Submitted pursuant to Third Circuit LAR 34.1(a)
December 6, 2007

Before: McKEE, CHAGARES and HARDIMAN,
Circuit Judges

(Opinion filed January 9, 2008)

_____

OPINION
_____

McKEE, <u>Circuit Judge</u>.

Kathleen and Michael Reger appeal from the verdict entered against them in the medical malpractice action they filed following their infant son's death. For the reasons that follow, we will affirm.

## I.

Because we write primarily for the parties, we need only address the arguments raised on appeal, as the parties are familiar with the factual and procedural background of this case.

## A. Exclusion of expert testimony.

Scientific opinion is admissible under Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court held that in order to qualify as scientific knowledge,

> an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation -- i.e., "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Id.* at 590. The Rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). To establish "reliability" the testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Id*. (citation and

2

internal quotations omitted).  "[A]n inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity."  *Id.* (citation omitted).

In his report, Dr. Hannan opined that the chylous effusions suffered by Nicholas were caused by the manner in which Dr. Pizarro performed the DHCA.  However, his opinion about the cause of the chylous effusions was not supported by citation or reference to any scientific data or texts.  The district court precluded Dr. Hannan's testimony on this issue because "Dr. Hannan's opinion is based on [his] 'subjective belief' as to what caused Nicholas's chylous effusions, rather than 'methods and procedures of science.'"  That was not an abuse of discretion.[1]  Quite simply, Hannan's *ipse dixit* does not meet Rule 702's reliability requirement.  *See Oddi v. Ford Motor Company*, 234 F.3d 136, 158 (3d Cir. 2000).

## B.  Jury instructions.

### (i).  There was insufficient evidence to warrant a "two schools of thought" charge.

The Regers argue that the district court's instruction on the "two schools of thought" doctrine was an abuse of discretion because there was insufficient evidence to warrant the charge.[2]  Presumably, they base their argument on the following portion of

---

[1]We review a district court's decision to admit or exclude expert testimony for an abuse of discretion.  *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000).

[2]The decision whether a party has produced sufficient evidence to warrant a
<span style="float:right">(continued...)</span>

3

Dr. Pizarro's cross-examination:

> **Q:** You didn't say that yesterday, did you?  You didn't tell Mr. Hudgins that Dr. Gaynor and Dr. Spray had periods of time that they took to get to that target temperature, right?
>
> **A:** No, my take away message during the training was that, you know, surgeons had different preferences, generally they target temperature and that's how they carry surgery, and then certainly tailor the strategy as to how they did things according to what the anatomy of the lesion was, what the repair to be undertaken was, what the patient's size was, and what, you know, a number of other circumstances.
>
> **Q:** And you think that they tailored it to what was required by the standard of care, correct?
>
> **A:** I don't know if you want to talk about standard of care, but maybe I think it would be worthwhile to talk about that, you know, so the jury could understand what standard of care means.
>
> **Q:** Well, wait, answer my question and then you can explain it.  Do you think that they cooled their patients for the period of time that they cooled them as we see here, based on what they thought was right for the person according to the standard of care?
>
> **A**: No, they made a decision based on what they thought individually was the right thing to do for that patient.  *There is no standard of care.*

App. 634-35 (emphasis is the Regers').

The Regers argue that, "in the absence of **any** standard of care, there cannot be a

second school of thought unless that school of thought is known as 'anything goes.'"

Regers' Br. at 24 (emphasis is the Regers').  However, they have taken Dr. Pizarro's

---

[2](...continued)
requested instruction is a matter within the discretion of the district court and will not be disturbed absent an abuse of discretion. *Tormenia v. First Investors Realty Co., Inc.*, 251 F.3d 128, 136 (3d Cir. 2000).

statement out of context. Immediately after Dr. Pizarro's last answer recited above, Dr.

Pizzaro offered the following explanation:

> there is a governing body called the Institute of Medicine that is trying to establish guidelines particularly based on evidence, you know, based on information.
>
> * * *
>
> Now the amount of evidence that really exists in the world of pediatric congenital heart surgery is very different for a number of reasons. . . . And, therefore, there is really not a great deal of consensus regarding how it is that you do things. As a matter of fact during recent meetings a couple of documents have been published as a result of those meeting where, . . . a survey of practices, . . . have been performed as to what it is you do about this, what you do about that.
>
> And there is a specific effort not to use the word standard of care because peers and experts in the field recognize that there is a great deal of variation as to how it is that you could approach a problem and have a satisfactory outcome and, therefore, it's been described as common practices, but certainly not a standard of care.

App. at 635. It is clear from this exchange that Dr. Pizarro explained what he meant

when he said there is no standard of care. Accordingly, we reject the Regers' contention

that the only standard of care is the "anything goes" standard.

Moreover, there was sufficient evidence to warrant the "two schools of thought"

charge. During the trial, the main points of contention were whether a single standard of

care governed how long DHCA should last and the target temperature the body should be

cooled to. Dr. Hannan testified that the duration should be for at least 20 minutes and the

target temperature should be under 20 degrees centigrade to ensure "uniform cooling" in

the entire brain. Pizarro's expert witnesses testified that there was not one unified

standard of care and that different surgeons, based on differing studies and modalities, had adopted different approaches. For example, Dr. Leonard Bailey, a cardiothoracic surgeon, testified that there is no single standard way to cool a patient for circulatory arrest. However, like Dr. Pizarro, Dr. Bailey cools until the infant reaches a target temperature of 20 degrees centigrade, and does not focus on the duration of the cooling. Dr. Bailey opined that there is no medical or scientific reason to cool for 20 minutes, as opined by Dr. Hannan. Dr. Bailey testified that he does not wait, after reaching a target temperature, for a certain number of minutes to expire before he starts to operate. He said: "That's precious time, and so you go to work." App. 330-32.

Since Dr. Hannan testified that there was only one way to cool using DHCA and Dr. Pizarro and his experts testified there were other approaches to cooling, the district court did not abuse its discretion in giving the "two schools of thought"charge.

### (ii). The "two schools of thought" charge should have included an instruction that a considerable number of practitioners followed the alternative approach favored by Dr. Pizarro.

The Regers argue that if a "two schools of thought" charge was warranted, the district court should have included an instruction that a considerable number of practitioners followed the alternative approach favored by Dr. Pizarro. During a hearing on objections to the jury charge, the Regers asked that a "proper alternative" be defined as treatment that a "considerable number of respected doctors would provide in the same or similar circumstances." The district court refused to add that language. On appeal, the

6

Regers argue that refusal was error.  The argument is without merit.

In essence, the Regers are arguing the district court should have engrafted a portion of Pennsylvania's  "two schools of thought" charge onto the charge it gave. Pennsylvania's "two schools of thought" instruction is as follows:

> Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise.

*Jones v. Chidester*, 610 A.2d 964, 969 (Pa. 1992).  However, it is undisputed that Delaware law applies to this case and Delaware does not have the same standard as Pennsylvania.  Delaware's "two schools of thought" doctrine is referred to as an "alternate approaches" doctrine, and the appropriate charge is as follows:

> Where there is more than one recognized approach and no one of them is used exclusively and uniformly by all practitioners of good standing, a physician is not negligent if, in the exercise of his best judgment, he selects one of the approved methods which in hindsight might be a wrong selection or one not favored by other practitioners.  Stated otherwise, when a physician chooses between appropriate alternative medical approaches, harm which results from physician's good faith choice of one proper alternative over the other, is not malpractice.

*Dunning v. Barnes*, 2002 WL 31814525 at *1 n.1 (Del. Super. Ct. Nov. 4, 2002).

Accordingly, the district court correctly refused to engraft Pennsylvania's "considerable number" language onto the charge.

### (iii).  The "informed consent" charge.

The Regers contend that the district court's charge on informed consent was

7

wrong for the following reason:

> Where a doctor feels that his technique is allowable because there is no standard of care, the jury must be given an opportunity to determine if the physician omitted a material fact that would have made a difference to the consenting person – the fact being that all other surgeons take the view that there is a standard of care regarding cooling time, and they follow it with excellent results.

However, this argument is without merit. As noted earlier, the Regers' statement of the appropriate standard of care is incorrect. In addition, their argument ignores the fact that, as the evidence produced at trial clearly shows, all other surgeons do not take the view that there is a single standard of care regarding cooling time.

## II.

For all of the above reasons, we will affirm the district court.