**Judith JOHNSON and Louis Johnson, Plaintiffs,**

v.

**Robert PORTZ, M.D., and Thomas Cathcart, P.A., and Ali Delbakhsh, M.D., and Beebe Medical Center, Sussex Emergency Associates, L.L.C., and Cardiology Consultants, P.A., Defendants.**

**Civil Action No. 08–593–JJF.**

United States District Court, D. Delaware.

April 22, 2010.

Leon Aussprung, Esquire of Law Office of Leon Aussprung, M.D., LLC, Philadelphia, PA, Natalie Wolf, Esquire and Timothy E. Lengkeek, Esquire of Young, Conaway, Stargatt, & Taylor, LLP, Wilmington, DE, Attorneys for Plaintiffs.

John D. Balaguer, Esquire and Jennifer Hurvitz Burbine, Esquire of White & Williams, Wilmington, DE, Attorneys for Defendants Robert Portz, Thomas Cathcart, and Sussex Emergency Associates LLC.

Dennis D. Ferri, Esquire and Allyson Marie Britton, Esquire of Morris James LLP, Wilmington, DE, Attorneys for Defendants Ali Delbakhsh and Cardiology Consultants, P.A.

Bradley John Goewert, Esquire; Judith M. Kinney, Esquire and Lorenza Anna Wolhar, Esquire of Marshall, Dennehey, Warner, Coleman, & Goggin, Wilmington, DE, Attorneys for Defendant Beebe Medical Center.

*MEMORANDUM OPINION*

FARNAN, District Judge.

Pending before the Court are Plaintiffs Judith Johnson and Louis Johnson's Motions In Limine. Plaintiffs filed three Motions In Limine: (1) Motion In Limine To Preclude All Testimony Of Proposed Defense Witness Frank Jones (D.I. 166), (2) Motion In Limine To Preclude All Testimony And Comments In Opening And Closing Arguments Relating To Miracles, Resurrection And/Or Other Religious References (D.I. 167), and (3) Motion In Limine To Preclude Defendants' Medical Expert Dr. Myerburg From Offering Statistical Evidence. (D.I. 168.) Defendants Beebe Medical Center, Inc., Dr. Robert Portz, M.D., Thomas Cathcart, P.A., Sussex Emergency Associates LLC, Dr. Ali Delbakhsh, M.D., and Cardiology Consultants PA. (collectively "Defendants") jointly oppose the Motions In Limine. (D.I. 175, 176, 177.) For the reasons discussed the Court will grant D.I. 166 and D.I. 168 and grant in part and deny in part D.I. 167.

## I. BACKGROUND

This case was initiated on September 23, 2008 when Plaintiffs Judith Johnson and Louis Johnson filed suit against Defendants. Plaintiffs' complaint alleges claims both under common law medical malpractice and the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"). (D.I. 1.)

The relevant facts took place on May 6, 2007, when Plaintiff Judith Johnson presented to the Emergency Department at the Beebe Medical Center. Ms. Johnson sought medical assistance because she had persistent indigestion, excessive belching, and chest pain. Following a physical exam, an electrocardiogram ("EKG") was performed at 7:53 PM and interpreted at 7:55 PM. The EKG showed that Ms. Johnson was having a heart attack. Shortly there after, Ms. Johnson became unresponsive. A code was called for Ms. Johnson and from about 8:00 PM to 8:34 PM measures were taken to revive her. At 8:34 PM Ms. Johnson was pronounced dead by Dr. Portz. At 9:10 PM Ms. Johnson was found to be alive and breathing by a tech who was to transport her to the morgue. Following the discovery that Ms. Johnson was alive, further medical assistance was provided. Ms. Johnson has had

some measure of recovery, but she does have permanent neurologic damage.

Through the instant Motions, Plaintiffs seek the Court to preclude several elements of evidence and/or testimony from trial on the grounds that they are not admissible under the Federal Rules of Evidence.

## II. PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE ALL TESTIMONY OF PROPOSED DEFENSE WITNESS FRANK JONES

Frank Jones is a proposed Defense witness who works for the Delaware Division of Services for Aging and Adults with Physical Disabilities. (D.I. 166 Ex. D.) Defendants intend to call Mr. Jones to testify as a fact witness regarding "the eligibility requirements for the Medicaid Acquired Brain Injury ("ABI") Waiver" and "the services available under the ABI waiver program." (*Id.*) Plaintiffs have moved to preclude Jones' testimony. (D.I. 166.)

### A. Parties' Contentions

■ In their Motion to preclude the testimony of Frank Jones (D.I. 166), Plaintiffs present four reasons why the Court should do so. (*Id.*) First, Plaintiffs argue that Mr. Jones should not be permitted to testify because Defendants did not provide notice of his testimony until after the close of discovery and because the lack of timeliness is not harmless or substantially justified. (*Id.* at 2–5.) Second, Plaintiffs assert that Defendants are attempting to utilize Mr. Jones as a de facto expert witness because he will create an inference about Ms. Johnson's eligibility in the ABI program. (*Id.* at 5–7.) Next, the Johnsons contend that testimony concerning the eligibility requirements of the ABI program is irrelevant, confusing, and prejudicial because there is no expert testimo-

ny on Ms. Johnson's potential eligibility in the program or evidence of Ms. Johnson's use of the program. (*Id.* at 7–8.) Lastly, Plaintiffs state that the Collateral Source Rule is not applicable to the instant case, again making testimony on the ABI program irrelevant. (*Id.* at 9–10.)

Defendants counter that the rationales presented by Plaintiffs do not warrant preclusion of Mr. Jones' testimony. Defendants first argue that the timing of the disclosure of Mr. Jones was substantially justified because the existence of the ABI program became known to Defendants after the close of discovery and was harmless because Defendants presented the opportunity to depose Mr. Jones with substantial time before trial. (D.I. 175 at 2–4.) Additionally, Defendants argue that Mr. Jones is solely a fact witness because he will testify only to the ABI program's eligibility requirements and not Ms. Johnson's qualifications. (*Id.* at 4.) Further, Defendants assert that Mr. Jones' proposed testimony concerns a public collateral source and is thus relevant under 18 Del. C. § 6862. (*Id.* at 4–5.) Lastly, Defendants argue that Mr. Jones' proposed testimony on the ABI program is admissible under the Fed.R.Evid. 403 balancing test because it is highly probative and relevant and not prejudicial. (*Id.* at 5–6.)

### B. Decision

#### 1. Timeliness of Notice of Mr. Jones

Under Fed.R.Civ.P. 37(c)(1) "[i]f a party fails to provide information or identity of a witness as required by Rule 26(a) or (e) the party is not allowed to use that information or witness to supply evidence ... unless the failure was substantially justified or is harmless." Because all parties agree that the disclosure of Mr. Jones was not timely, his testimony is only admissible if the Court determines that the untimeli-

ness was substantially justified or harmless.

■ The Third Circuit and this Court have focused on a series of factors in evaluating harmlessness and substantial justification:

> In determining whether a failure to disclose is harmless courts consider such factors as: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence (the "Pennypack factors").

*Boehringer Ingelheim Int'l GMBH v. Barr Labs. Inc.*, Civ. No. 05–700–JJF, 2008 WL 2756127, *2, 2008 U.S. Dist. LEXIS 53475, *4–5 (D.Del. July 15, 2008) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.1997); *see also, Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–905 (3d Cir. 1977)). Lastly, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of wilful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719 (quoting *Meyers*, 559 F.2d at 905).

In the Court's view, when the factors are applied to the instant matter, the untimeliness of the declaration of Mr. Jones does not warrant precluding his testimony. First, although Plaintiffs oppose the testimony, they have not stated any harm that they would face if Mr. Jones is allowed to testify. Second, there is no indication of bad faith on the part of Defendants, who appear to have learned about the ABI program and Mr. Jones following the close of discovery. Third, any potential discovery prejudice can be cured because Defen-

dants have stated they will make Mr. Jones available for deposition despite the close of discovery. Fourth, the untimeliness is not likely to impact the upcoming trial because a deposition of Mr. Jones and the necessary discovery regarding him can be completed relatively easily as Mr. Jones does not represent a significant portion of the case. Thus, the Court concludes that the timing of the disclosure of witness Frank Jones was harmless and substantially justified.

### 2. Mr. Jones as Fact and/or Expert Witness

■ Plaintiffs contend that although Defendants have presented Mr. Jones as a fact witness, he will actually be used as a de facto expert witness because he is being presented to encourage the jury to infer that Ms. Johnson does or will qualify for the ABI program. (D.I. 166 at 6.) In spite of this contention, the Court is convinced by Defendants' statement that Mr. Jones' testimony will be limited to the eligibility requirements and benefits of the ABI program. Additionally, Plaintiffs' assertion that Fed.R.Evid. 701 applies is misguided. Fed.R.Evid. 701 concerns the type of inference that a lay witness may testify to, not the potential inference that a juror may come to following the testimony of a witness on fact. Therefore, the Court concludes that Mr. Jones is not being improperly offered as a de facto expert witness, if his testimony strays from that of a fact witness, an appropriate objection can be made at trial.

### 3. Applicability of the Collateral Source Rule

■ Delaware statutory law superceded the common law collateral source rule in medical negligence actions through 18 Del. C. § 6862. That section reads in pertinent part:

In any medical negligence action for damages because of property damage or bodily injury ... there may be introduced, and if introduced, the trier of facts shall consider evidence of: (1) Any and all facts available as to any public collateral source of compensation or benefits payable to the person seeking such damages (including all sums which will probably be paid payable to such person in the future) on account of such property damage or bodily injury.

18 Del. C. § 6862. The purpose of this statute is to prevent the "collection of a loss from a collateral public source (such as Social Security) and then the collection for the same loss from the party or hospital being sued." *Nanticoke Memorial Hospital, Inc. v. Uhde*, 498 A.2d 1071, 1075 (Del.1985).

■ There is little doubt that if Ms. Johnson was currently receiving benefits under the ABI program, such benefits would qualify as a public collateral source. However, Ms. Johnson has not received nor attempted to receive benefits under the ABI program. The Court concludes that Ms. Johnson's probability of being paid under the ABI program does not rise to the level of "sums which will probably be paid" under the statute, and thus this statute requiring disclosure is not applicable. In the Court's view, the argument that Ms. Johnson would probably be paid under the ABI program if she was eligible and if she chose to apply, is too tenuous to determine that she would probably be paid. Consequently, the collateral source rule, as it is embodied in 18 Del. C. § 6862, is not applicable to the instant matter.

### 4. Relevance, Prejudice, and Probative Value of Mr. Jones' Testimony

■ Although the Court concludes that the untimely declaration of Mr. Jones as a witness was harmless and that he is in fact a fact witness, the Court also concludes that the probative value of Mr. Jones' proffered testimony on the ABI program is substantially outweighed by the undue prejudice and confusion it could cause a jury. The relevance of the proffered testimony is at best questionable given the decision that 18 Del. C. § 6862 is not applicable to the instant situation. Because of the limited relevance of the testimony, a jury would likely be confused by it or accord it more weight than is warranted. Consequently, the testimony of Mr. Jones will be excluded under Fed.R.Evid. 403.

### C. Conclusion

For the reasons discussed the Court concludes that the testimony of Frank Jones is not admissible and will thus grant Plaintiffs' Motion In Limine. (D.I. 166.)

### III. PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE ALL TESTIMONY AND COMMENTS IN OPENING AND CLOSING ARGUMENTS RELATING TO MIRACLES, RESURRECTION, AND/OR OTHER RELIGIOUS REFERENCES

### A. Parties' Contentions

By this Motion (D.I. 167), Plaintiffs request that the Court preclude testimony and comments relating to miracles, resurrection, and/or religious explanations for Ms. Johnson's recovery. Plaintiffs contend that any such testimony or discussion would be prejudicial because there is no issue of religion in the case and jurors could be improperly influenced to rely on religious beliefs instead of the facts of the case. (D.I. 167.)

Defendants argue that the use of the words "miracle," "miraculous," "resurrection," and "return to life" are appropriate words to use in describing Ms. Johnsons's

recovery and the use of those words does not attempt to appeal to a religious authority. (D.I. 176.) Defendants contend that the limited case law on the topic precludes appealing to religious beliefs but not the use of language that is used both in religious and non-religious contexts. (*Id.*)

## B. Decision

Although the words miracle, resurrection, and their derivatives are often used in religious contexts, the words are not inherently religious. For example Princeton WordNet provides two definitions of miracle: 1) "any amazing or wonderful occurrence," and 2) "a marvelous event manifesting a supernatural act of a divine agent."[1] Because the specific words Plaintiffs seek to preclude are not inherently religious, an order precluding their use in any way would be overly broad, particularly considering the nature of Ms. Johnson's recovery.

■ The Court is, however, cognizant of Plaintiffs' concern of implying a religious element in Ms. Johnson's recovery that some jurors may take as above the law. Because of that concern, the Court will adopt the logic used in a similar situation in the Northern District of Mississippi. *See Whitfield v. Harris,* 474 F.Supp.2d 822, 825 (N.D.Miss.2007). In *Whitfield,* Judge Mills ordered that "it is prohibited for any counsel to mention or refer to any deity or make any religious reference in such a manner as can reasonably be construed to indicate that the jury should consider the teachings or beliefs of the deity or any religious references in addition to or to the exclusion of the law." *Id.* That same requirement will be in effect in this case. Thus, the Court will grant Plaintiffs' Motion (D.I. 167) as it relates to religious references and deny it as it re-

lates to the use of the words "miracle" and "resurrection."

## IV. PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS' MEDICAL EXPERT DR. MYERBURG FROM OFFERING STATISTICAL EVIDENCE

### A. Parties' Contentions

■ By their Motion in Limine (D.I. 168), Plaintiffs seek the preclusion of the statistical evidence presented by Defendants' expert witness Dr. Myerburg. Plaintiffs dispute the admissibility of the statistical evidence offered by Dr. Myerburg relating to the probability of survival without central nervous system damage after a cardiac arrest depending on the time it takes to resuscitate a patient. Plaintiffs argue that the testimony is unduly prejudicial because it is not clearly the product of reliable principles and methods and can not be used to show that simply because an event is probable it occurred without medical negligence. (*Id.*) Defendants counter that Dr. Myerburg's statistics are admissible evidence because they are relevant to evaluating proximate cause and are supported by citation and Dr. Myerburg's long and academically distinguished career. (D.I. 177.)

### B. Decision

■ The Court concludes that while Dr. Myerburg's statistics may be relevant to evaluating proximate cause, they have not been presented with sufficient support to establish reliability. Pursuant to Fed. R.Evid. 702, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Pineda v. Ford Motor Co.,* 520 F.3d 237, 247 (3d Cir.2008) (internal quotation omitted) (citing *In re Paoli*

---

**1.** *See* Princeton WordNet at http://wordnet. princeton.edu.

*R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir.1994)). In evaluating reliability, there are a number of factors for district courts to consider. *Id.* at 247–48. These factors include, but are not limited to:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Id.* The evaluation of these factors is made with the understanding that the Federal Rules of Evidence "embody a strong preference for admitting any evidence that may assist the trier of fact." *Id.* at 243.

Although the Court finds Dr. Myerburg's qualifications as an expert witness acceptable, his opinions as they relate to his proposed hypothetical outcomes for cardiac arrest patients (*See* D.I. 168 Ex. 1 at 6) lack the necessary reliability to be admissible. In prefacing his hypotheticals Dr. Myerburg stated that "[t]hey are based on existing information in peer-reviewed medical literature, concepts in current medial textbooks considered reliable by experts in the relevant field of medicine, and my personal knowledge, background and experience." (*Id.*) Dr. Myerburg also concludes his report with ten references. (*Id.*) While the Court respects Dr. Myerburg's experience, a statement providing a set statistic on the chance of nervous system damage requires specific support. The use of such statistics implies the existence of a specific study on the issue, and if such support is lacking, a jury may give improper weight to the statistics provided. An example of an appropriate level of citation is citation to specific medical texts in which a cooling period, directly in line with that espoused by the expert witness, is called for. *See Madden v. A.I. DuPont Hosp. for Children of the Nemours Found.*, 264 F.R.D. 209 (E.D.Pa. 2010). Dr. Myerburg's statement that his hypotheticals were drawn from existing sources and his personal experience do not provide the necessary specificity for reliability. The instant level of specificity is in line with *Reger*, where the Third Circuit concluded that a Doctor's opinions were not sufficiently supported because they did not have proper scientific citation. *Reger v. A.I. duPont Hosp. for Children of the Nemours Found.*, 259 Fed.Appx. 499, 500 (3d Cir.2008).

Thus, the Court concludes that Plaintiffs' Motion in Limine will be granted because Dr. Myerburg's statistical testimony is not properly supported.

## V. CONCLUSION

For the reasons discussed the Court will grant Plaintiffs' Motion In Limine To Preclude All Testimony Of Proposed Defense Witness Frank Jones (D.I. 166), grant in part and deny in part Plaintiffs' Motion In Limine To Preclude All Testimony And Comments In Opening And Closing Arguments Relating To Miracles, Resurrection And/Or Other Religious References (D.I. 167), and grant Plaintiffs' Motion In Limine To Preclude Defendants' Medical Expert Dr. Myerburg From Offering Statistical Evidence. (D.I. 168.)

An appropriate order will be entered.

## *ORDER*

At Wilmington, this *22* day of April 2010, for the reasons set forth in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1. Plaintiffs Judith Johnson and Louis Johnson's Motion In Limine To Preclude All Testimony Of Proposed Defense Witness Frank Jones (D.I. 166) is **GRANTED;**

2. Plaintiffs Judith Johnson and Louis Johnson's Motion In Limine To Preclude All Testimony And Comments In Opening And Closing Arguments Relating To Miracles, Resurrection And/Or Other Religious References (D.I. 167) is **GRANTED IN PART,** as it relates to improper religious statements, and is **DENIED IN PART,** as it relates to the preclusion of specific words;

3. Plaintiffs Judith Johnson and Louis Johnson's Motion In Limine To Preclude Defendants' Medical Expert Dr. Myerburg From Offering Statistical Evidence (D.I. 168) is **GRANTED.**